

**Dated: October 4, 2017**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 16-14337-JDL |
| BLAKE LAWRENCE KRETCHMAR, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SUSAN MANCHESTER, TRUSTEE and | ) | |
| FARM CREDIT OF ENID, PCA, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 17-01026-JDL |
| | ) | |
| BLAKE LAWRENCE KRETCHMAR, | ) | |
| DANNY KRETCHMAR, | ) | |
| DEBBIE KRETCHMAR, | ) | |
| and KRETCHMAR FARMS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION TO DISQUALIFY COUNSEL**

**I. Introduction**

In this adversary proceeding brought by the Trustee and a creditor for the

substantive consolidation of the Debtor's Parents into Debtor's bankruptcy, the Parents

seek the disqualification of the counsel for the Trustee and creditor, G. Blaine Schwabe and Craig M. Regens of the firm of Gable Gotwals ("GableGotwals"). Before the Court for consideration is the *Motion of Danny and Debbie Kretchmar to Disqualify Plaintiffs' Counsel* (the "Motion") [Doc. 23], the *Plaintiff's' Response to Defendant Parents' Motion to Disqualify Counsel* (the "Response) [Doc. 29] and the Parents' *Reply in Support of Motion to Disqualify Plaintiffs' Counsel* (the "Reply") [Doc. 35]. The following constitutes findings of fact and conclusions of law pursuant to Fed.R. Bankr. P. 7052, as made applicable to contested proceedings pursuant to Fed. R. Bankr. P. 9014.

## II. Background

On October 27, 2016, Blake Lawrence Kretchmar (the "Debtor") filed a voluntary Chapter 12 bankruptcy. [Doc. 1]. The Debtor's Schedule D reflected Farm Credit of Enid, PCA ("Farm Credit") as a secured creditor having a claim of $581,442, secured by collateral worth $446,860, with a deficiency (unsecured) claim of $245,782. [Doc. 12-1, pg.15]. On February 23, 2017, Farm Credit filed its Proof of Claim ("POC") in the amount of $583,882. [Claim 3-1]. The POC reflected that the claim was secured by, among other things, "all of debtor's equipment whether now owned or hereafter acquired . . . all livestock, farm products, inventory, general intangibles, accounts . . . crops, farm products", the value of which was "yet to be determined for purposes relevant to this Proof of Claim . . . accordingly, the amounts of Creditor's claim which are secured and unsecured are likewise not determined." [Claim 3-1, pgs. 6-7]. The POC reserved Farm Credit's right to file an amended proof of claim to provide, among other things, the amount of its claim that was unsecured following the liquidation of collateral. [Claim 3-1, pg. 6].

2

On December 13, 2016, Farm Credit, acting through its counsel GableGotwals, filed its *Motion for Limited Relief From the Automatic Stay and for Abandonment of Property* with regard to a check from the United States Dept. of Agriculture in the amount of $22,075, payable to Farm Credit relating to the Debtor's participation in a federal farm program. [Doc. 24]. On February 6, 2017, the Court entered an *Agreed Order Granting Farm Credit of Enid, PCA's Motion for Limited Relief and for Abandonment of Property* by which the bankruptcy estate relinquish any interest in the check. [Doc. 41]. On February 24, 2017, Farm Credit filed its *Motion for Relief From the Automatic Stay and for Abandonment of Property* by which it sought to enforce its security interest in some thirty-six (36) specifically described items of personal property. [Doc. 54]. The lifting of the stay and abandonment of the property to Farm Credit was consistent with the terms of the Chapter 12 Plan proposed by the Debtor. [Doc. 51 ]. On March 14, 2017, the Court entered an *Agreed Order Modifying Automatic Stay and for Abandonment* lifting the automatic stay and abandoning the property/collateral which Farm Credit had sought. [Doc. 60].[1]

Following the liquidation of its collateral, on August 8, 2017, Farm Credit filed its Amended POC in the amount of $229,760.39 (reduced from its original claim in the amount of $583,881.96 ) which "with a single exception remaining, is an unsecured claim . . . [t]he single exception, for which Creditor's claim continues to be secured, regards Farm Credit's continuing security interest in and to one or more 2016 crop year government payments,

---

[1] On March 29, 2017, the Court entered a *Corrected (Nunc Pro Tunc) Agreed Order Modifying Automatic Stay and for Abandonment* which corrected a mis-description in two vehicles in which Farm Credit held a security interest and to provide for the application to Debtor's obligations of Farm Credit stock held as collateral. [Doc. 71].

not yet received and applied (and anticipated to be not more than approximately $20,000), the claim is an unsecured claim." [Claim 3-2, pgs. 5, 7].

On March 15, 2017, the Debtor gave notice of his conversion of the case from Chapter 12 to Chapter 7 [Doc. 61], and Susan Manchester was appointed Trustee. [Doc. 67]. On May 12, 2017, Manchester sought her appointment as attorney for the Trustee, and, without objection, on May 31, 2017, the Court appointed Manchester attorney for the Trustee. [Doc. 94].

On June 9, 2017, the Trustee filed her *Application to Appoint Special Counsel* seeking to employ GableGottwals "assist her to act as co-counsel in her investigation, analysis and prosecution of contested matters and/or adversary proceedings relating to possible objection to discharge, turn over of property of the estate and/or voidable transfers." [Doc. 100]. On the same date the Trustee sought to appoint GableGotwals special counsel, June 9, 2017, the Trustee filed the present adversary proceeding on behalf of herself and Farm Credit naming the Debtor and his Parents as defendants and seeking, among other things, the substantive consolidation of the estates of the Parents with Debtor's bankruptcy. [Doc. 101]. The adversary Complaint was signed by the Trustee and the GableGotwals attorneys as *"Proposed Special Litigation Co-Counsel for Trustee."* No objections were filed to the Application to Appoint Special Counsel, and following the expiration of the objection period, on June 26, 2017, the Court entered its *Order Authorizing Trustee to Appoint Special Counsel*. [Doc. 107].

The Parents have moved to disqualify the Gable Gotwals attorneys asserting that they are not "disinterested" and "represent an interest adverse to the estate" in that (1) they represent Farm Credit, a secured creditor whose interest is in conflict with the general

4

unsecured creditors represented by the Trustee, and (2) even if Farm Credit's remaining claim(s) could be considered unsecured, if the claims of substantive consolidation were successful, the assets of the Parents would be subject to Farm Credit's security interests heretofore only asserted against the assets of the Debtor.  Farm Credit and the Trustee have responded to the Motion to Disqualify by asserting (1) the Court previously entered a final appealable order appointing GableGotwals as special counsel after no party had opposed the same, (2) all of Farm Credit's collateral has been liquidated (except one government farm program check for approximately $20,000), its remaining claim of approximately $200,000 is unsecured, (3) even though Farm Credit may have  a yet to be liquidated small secured claim in the nature of the government check there is no actual conflict with the interest of the Trustee on behalf of the unsecured creditors with the joint representation of GableGotwals, and (4) substantive consolidation and other avoidance claims made in the adversary pose no conflict with GableGotwals' representation as such claims are for the benefit of all unsecured creditors.

### III. General Legal Standards Regarding Disqualification of Counsel

The burden of proof is on the movants as the party seeking disqualification of a professional appointed under 11 U.S.C. § 327.[2]  *In re Cleveland Trinidad Paving Co.*, 218 B.R. 385, 388 (Bankr. N.D. Ohio 1998).  The moving party bears the initial burden of going forward with evidence sufficient to establish a prima facie case that disqualification is warranted.  *Lowe v. Experian*, 328 F.Supp.2d 1122 (D. Kan. 2004); *World Youth Day, Inc.*

---

[2]Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

*v. Famous Artists Merchandising Exchange, Inc.*, 866 F.Supp.1297 (D. Colo. 1994). However, the burden is not a heightened one, rather, "that burden must be borne by a preponderance of the evidence to show that the standards of § 327(a) and Rule 2014 have been compromised." *Cleveland Trinidad Paving Co.,* 218 B.R. at 388. The ultimate burden of proof, however, lies with the attorney or firm whose disqualification is sought. *Graham v. Wyeth Laboratories Division of American Home Products Corp.*, 906 F.2d 1419, 1424 (10th Cir. 1990); *Lowe*, 328 F.Supp.2d at 1125; *In re Waldrop* , 2016 WL 6090849 (Bankr. W.D. Okla. 2016).

The Court has the inherent power to disqualify counsel "where necessary to preserve the integrity of the adversary process." *Lowe v. Experian*, 328 F.Supp.2d 1122 (D. Kan. 2004). Motions to disqualify counsel are committed to the court's sound discretion. *Parkinson v Phonex Corp.*, 857 F.Supp. 1474 (D. Utah 1994); *Beck v. Board of Regents of the State of Kansas,* 568 F.Supp.1107 (D. Kan. 1983) (the court should not act unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation."); *Greenebaum-Mountain Mortgage Co. v. Pioneer National Title Insurance Co.,* 421 F.Supp. 1348,1353-54 (D. Colo. 1976).

A motion to disqualify must be decided on the specific facts of each case, and the court must carefully balance the interest in protecting the integrity of the judicial process against the right of a party to have the counsel of its choice. *Lowe v. Experian*, 328 F.Supp.2d 1122 (D. Kan. 2004). A functional analysis is required. *SLC Limited V v. Bradford Group West, Inc.*, 999 F.2d 464, 468 (10th Cir. 1993); *Polly Software International Inc. v. Su*, 880 F.Supp. 1487,1494 (D. Utah 1995).

6

An evidentiary hearing, is not required when the parties, as the Court finds here, have fully briefed the issue of disqualification, and there are no disputed issues of fact or there is otherwise no need for any additional evidence to be presented to the Court. *Weeks v. Independent School District No. I-89 of Oklahoma County*, 230 F.3d 1201, 1212 (10th Cir. 2000).  However, the court must make specific findings and conclusions when ruling on a motion for disqualification of counsel.  *Fullmer v. Harper*, 517 F.2d 20 (10th Cir. 1975).

### IV. Discussion

The qualifications prerequisite to employment of professionals is set forth in 11 U.S.C. § 327.  Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

This section creates a two-part requirement for retention of counsel: counsel must "not hold or represent an interest adverse to the estate" and must be a" disinterested person."  *In re Cook*, 223 B.R. 782, 789 (10th Cir. BAP 1998); *In re 7677 East Barry Avenue Associates, L.P.*, 419 B.R. 833, 840 (Bankr. D. Colo. 2009).  Although the phrase "hold or represent an interest adverse to the estate" is not defined in the Bankruptcy Code, numerous courts in the Tenth Circuit have adopted the definition found in *In re Roberts*, 46 B.R. 815 (Bankr. D. Utah 1985 ), *aff'd in part and rev'd in part on other grounds,* 75 B.R. 402 (D. Utah 1987) (en banc):

> (1) to possess or assert any economic interest that would tend

7

> to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under the circumstances that render such a bias against the estate.

See also, *Cook*, 223 B.R. at 789 ; *East Barry Avenue Associates*, 419 B.R. at 842; *In re Hutter*, 215 B.R. 308, 313 (Bankr. D. Conn. 1997).

The term "disinterested person" is defined in the Bankruptcy Code as one that "does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason." § 101(14)(C).  In determining whether a professional has or represents an  "adverse interest", Judge Rasure stated in *In re Git-N-Go, Inc*. 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004):

> "[I]f it is plausible that the representation of another interest may cause the debtor's attorney to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *In re The Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).  An actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served at the expense of the other.' *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D. N.J.1989), *aff'd* in pertinent part, 119 B.R. 35 (D. N.J. 1990). 'As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might, in the view of the trustee or the bankruptcy court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of the case.' *In re Amdura Corp.*, 121 B.R. 862, 865 (Bankr. D. Colo. 1990), *quoting Collier on Bankruptcy* ¶ 327.03 (1985).

Section 327(a) is tempered somewhat by § 327(c) for a proposed attorney who also represents a creditor in the bankruptcy case.  *InterWest Business Equipment, Inc. v. United States Trustee (In re InterWest Business Credit, Inc.)*, 23 F.3d 311, 316 (10th Cir.

1994) (explaining that "subsection (c) addresses the situation where dual representation of a creditor and debtor [trustee] is the *only* reason advanced for disqualification *and* the professional is otherwise qualified.") (Emphasis in original). Thus, Congress has explicitly stated that a professional's representation of a creditor does not *per se* disqualify it from being retained under § 327(c). Section 327(c) provides that:

> [a] person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an *actual conflict of interest.* (Emphasis added).

Though the phrase "actual conflict of interest" is contained in subsection (c) and not in subsection (a) of § 327, it is clear to this Court that a professional with an actual conflict of interest would also necessarily fail to meet the requirements of subsection (a). *Winship v. Cook (In re Cook)*, 223 B.R. 782, 789 (10th Cir. BAP 1998) (While representation of a creditor is not a *per se* bar to employment by the trustee under § 327(c), an actual conflict of interest or the appearance of impropriety remain as independent grounds for disqualification."); *In re First State Bancorporation*, 2013 WL 823414 (Bankr. D. N.M. 2013); *In re Champ Car World Series, LLC*, 411 B.R. 619, 624 (Bankr. S.D. Ind. 2008) ("Section 327(a), as well as the 'creditor exception' of § 327(c) provides for a *per se* disqualification of any attorney who has an actual conflict of interest with representing the trustee."); *In re Platinum Oil Properties, L.L.C.,* 2009 WL 5201851 *10 (Bankr. D. N.M. 2009) ("Section 327(a) of the Bankruptcy Code imposes a *per se* disqualification of counsel for the estate who has an actual conflict of interest"). Accordingly, § 327(c) allows the trustee to employ a creditor's attorney so long as the dual representation presents no

9

actual conflict of interest. In re Johnson, 312 B.R 810, 819 (E.D. Va. 2004).

The term " actual conflict of interest" is not defined in the Bankruptcy Code.  See *In re BH & P Inc.*, 949 F.2d 1300, 1315 (3rd Cir. 1991).  Instead, the term "has been given meaning largely through a case-by-case evaluation of particular situations in the bankruptcy context."  *Id*.  In this regard, "courts have been accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists 'in light of the particular facts case.'"  *Id*.  (Citing *In re Star Broadcasting, Inc.*, 81 B.R. 835, 844 (Bankr. D. N.J. 1988).  Courts have said that "[a]n actual conflict of interest exists where there is 'active competition between two interests, in which one interest can only be served at the expense of the other.'" *Johnson*, 312 B.R. at 822 (*quoting In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D. N.J.1989), *aff'd,* 949 F.2d 1300 (3rd Cir. 1991); *In re Worldwide Wholesale Lumber, Inc*., 364 B.R. 197, 203 (Bankr. D.S.C. 2006).

Similarly, a disqualifying interest adverse to the estate exists when the professional represents a client that "holds or asserts any economic interest that would tend to reduce the value of the bankruptcy estate or that would give rise to an actual . . . dispute in which the estate is a rival claimant."  *Johnson*, 312 B.R. at 820, n. 8 (*quoting In re Dev't Corp. of Plymouth, Inc*., 283 B.R. 464, 469 (Bankr. E.D. Mich. 2002)(*citing In re C. F. Holding Corp*., 164 B.R. 799 (Bankr. D. Conn. 1994); or when the client "possesses a predisposition under circumstances that render such predisposition a bias against the estate" *Id*; or when counsel's duty to one client "will color and influence, and materially limit, the advice" it gives to the other.  *In re Git-N-Go*, Inc., 321 B.R. 54, 61 (Bankr. N.D. Okla. 2004).

In summary, where, as here, an attorney is employed by both the trustee and the

creditor, there is no "actual conflict of interest" warranting disqualification unless (i) the interest of the trustee and the creditor are in fact directly conflicting or (ii) the creditor is actually afforded a preference that is denied to other creditors. A conflict "in which the competition is presently dormant, but may become active if certain contingencies occur," is merely potential and thus does not warrant disqualification. See *In re BH & P, Inc.*, 103 B.R. at 563. These principles, applied here, persuade this court to the conclusion that no actual conflict of interests exists here, (and this is important) at least for the present time. In the Court's view, the interests of the Trustee and Farm Credit do not conflict; they coincide; they both are interested in enlarging the estate by substantive consolidation and other avoidance actions. By undertaking such actions the Trustee and Farm Credit have the mutual goal of potentially "increasing the pot" of the now existing Debtor's estate which may potentially benefit all of the creditors of Debtor, including Farm Credit's presently outstanding unsecured, deficiency of approximately $200,000.[3]

The Court recognizes that the employment of professionals with a potential conflict of interest is generally disfavored.[4] As the court observed in *In re BH & P, Inc.*, "the terms 'actual' and 'potential' conflict merely describe different stages in the same relationship." 103 B.R. 556, 563 (Bankr. D. N.J. 1989). This Court, however, believes that the decision

---

[3] In noting the Trustee and Farm Credit's goal of "increasing the pot" available for creditors, the Court does not in any way intimate whether their claim for substantive consolidation is either desirable or sustainable. The sufficiency of the Complaint is currently before the Court upon the Defendant Parents' Motion to Dismiss. In this Opinion, the Court's only concern is whether the claim of substantive consolidation *at this time* creates an impermissible conflict of interest on the part of Farm Credit's attorneys requiring disqualification.

[4] See, *Note: The Disinterested Standard of Section 327(a): Applying an Equitable Solution for Potential Conflicts in Small Bankruptcies*, 7 American Bankruptcy Institute Law Review 363 (Spring 1999).

of whether to approve, or in this case disqualify, employment of a person who has a "potential" as opposed to an "actual" conflict is solely within the Court's discretion.

Thus, the Court's finding today that disqualification of GableGotwals is not merited is entered with a caveat. The Court's finding is based upon representations of the Trustee and the GableGotwals attorneys in both the POC and their *Response* that all of Farm Credit's collateral has been liquidated, it no longer asserts any claim as a secured creditor with the exception of the $20,000 check representing proceeds of 2016 Government farm program payments and that its only remaining claim is one for an unsecured deficiency. Should Farm Credit assert itself as a secured creditor in any non-abandoned property in the possession of the Debtor the same would be regarded by this Court as creating an actual conflict of interest compelling the attorneys' disqualification. Similarly, though not stated by Farm Credit, the Parents have intimated that if substantive consolidation were achieved and the non-debtor and Debtor estates merged Farm Credit might assert a security interest in property of the non-debtors of a type previously described in their security agreements with the Debtor. If such an assertion of a security interest were made by Farm Credit, the Court would feel compelled to *sua sponte* disqualify the GableGotwals attorneys from representation of the Trustee.

For the reasons stated above,

**IT IS ORDERED**  that the *Motion of Danny and Debbie Kretchmar to Disqualify Plaintiffs' Counsel* [Doc. 23] is **DENIED.**

# # #

12