

**Dated: February 5, 2018**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 16-14337-JDL |
| BLAKE LAWRENCE KRETCHMAR, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SUSAN MANCHESTER, TRUSTEE and | ) | |
| FARM CREDIT OF ENID, PCA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 17-01026-JDL |
| | ) | |
| BLAKE LAWRENCE KRETCHMAR, | ) | |
| DANNY KRETCHMAR, | ) | |
| DEBBIE KRETCHMAR, | ) | |
| KRETCHMAR FARMS, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND  ORDER ON MOTION TO DISMISS**

**I. Introduction**

This case once again presents one of the most controversial and difficult to apply

concepts in bankruptcy law: substantive consolidation of debtors and non-debtors.  This

is an adversary proceeding brought by the Chapter 7 Trustee and creditor Farm Credit of Enid, PCA ("Farm Credit")(collectively the "Plaintiffs") seeking the substantive consolidation of the non-debtor parents and the family farm operation into the bankruptcy estate of the Debtor/son.  This matter comes on for consideration upon the *Motion to Dismiss and Brief in Support* (the "Motion") filed by Defendants, Danny Kretchmar and Debbie Kretchmar (the "Parents") [Doc. 21][1]; *Plaintiffs' Response to Defendant Parents' Motion to Dismiss* filed by the Trustee and Farm Credit [Doc. 27]; the *Reply Brief In Support of Motion to Dismiss* filed by the Parents (the "Reply") [Doc. 34] and the *Plaintiff's' Omnibus Sur-Reply to Defendant Parents' Motion to Dismiss et. cetera* [Doc. 40].

In their Motion, the Parents argue that the Complaint should be dismissed on two grounds: (1) substantive consolidation of non-debtors circumvents the stringent procedures and protections relating to involuntary bankruptcy cases imposed by § 303 of the Bankruptcy Code[2], i.e., in the words of the Parents, the Plaintiffs are "unlawfully seeking to commence an involuntary bankruptcy petition against the Parents" and (2) the Plaintiffs' other claims against the  Parents "are state law claims against the non-debtor entities over which the Court lacks jurisdiction."  In response, Plaintiffs argue that (1) the Court has jurisdiction over the Plaintiffs' state law claims, (2) that the remedy of substantive consolidation is not subject to the requirements governing involuntary petitions and (3) the Parents' Motion fails to argue the applicable standards for a motion to dismiss.  In reply,

---

[1] References to Docket Entries in this Order refer to the docket in Adversary Case No.17-01026, unless otherwise noted.

[2] All further references to "Code", "Section", and "§" are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise indicated.

the Parents assert that substantive consolidation is not applicable when it attempts to consolidate an individual debtor with an individual(s) non-debtor(s). The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and 9014.[3]

## II. Jurisdiction

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157(a) and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  The jurisdiction of the bankruptcy courts is set forth in 28 U.S.C. § 1334, which provides, in pertinent part, that "the district courts shall have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11".  28 U.S.C. § 1334(b).  Title 28 U.S.C. § 157(b) provides that "[b]ankruptcy judges may hear and determine all cases arising under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

## III.  The Complaint

As will be discussed in greater detail below, since a motion to dismiss is judged on the well-pled allegations of a complaint being accepted as true, the substantive allegations of Plaintiffs' Complaint need be examined.[4]

---

[3]  All future references to Bankruptcy Rule or Bankruptcy Rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[4]  Plaintiff's Complaint is forty-five (45) pages in length and comprised of sixteen (16) separate Claims for Relief.  Many of the allegations and/or Claims for Relief involve core and non-core matters, such as objections to the Debtor's discharge and the dischargeability of his debt to Farm Credit, turnover, accounting and state law claims, in addition to the claim for substantive consolidation (Claim for Relief 9).

Debtor is an individual farmer residing in Medford, Grant County, Oklahoma. He lives and conducts a cattle, ranching and/or farming operation on a half-section of land in Grant County, the title to which is held by his mother, Defendant Debbie Kretchmar. The Debtor owns no real property in his individual name. Debtor also conducts cattle, ranching and/or farming operations on additional tracts of land in Grant County, Oklahoma, which are titled in the name of both his mother and his father, Defendant Danny Kretchmar (Defendants Danny and Debbie Kretchmar being collectively identified as the "Parents"). The Parents reside in Cleveland, Pawnee County, Oklahoma. Debtor's farming operations as well as those of the Parents were sometimes conducted under the name of Kretchmar Farms, Kretchmar Partners or the names of the Debtor or Parents. Plaintiffs allege that Kretchmar Farms is an unincorporated association (either as a general partnership or joint venture) through which the Debtor and the Kretchmar Partners conducted Kretchmar Farms. All cattle, ranching and farming operations, as well as for custom farming conducted elsewhere, were invoiced on Kretchmar Farms letterhead or invoices, but neither Debtor nor Kretchmar Farms paid rent for the home in which Debtor lived or for the agricultural land on which Debtor or Kretchmar Farms conducted operations.

Insofar as directly related to the claim of substantive consolidation, the Complaint alleges among other things:

1. Although Kretchmar Farms operated as general partners and/or joint venturers and held themselves out to customers as Kretchmar Farms, when dealing with certain creditors, including Farm Credit, Kretchmar Partners pretended to be separate entities and operations in order to borrow money and obtain other advantages. [Complaint ¶ 72].

2. Kretchmar Partners treated money and other assets as fungible or

interchangeable amongst Kretchmar Partners. [Complaint ¶ 73].

3.  It is impossible to segregate and ascertain the individual assets and liabilities of the individual Kretchmar Partners stemming from their operations as a general partnership and/or joint venture.  [Complaint ¶ 75].

4.  Debtor and Danny  Kretchmar, individually and/or for the benefit of Kretchmar Farms and the individual Kretchmar Partners, engaged in multiple transfers of assets, to include for payment of debts, without observing legal formalities required of separate entities.  [Complaint ¶ 76].

5. Debtor and the Parents' assets (including those used by Debtor and/or Kretchmar Farms, but for which bare title is held by them individually) and liabilities are so intertwined and co-mingled that separating them is prohibitive and prejudices all interested parties. [Complaint ¶ 78].

6.  Debtor  and  Parents  so  thoroughly  disregarded  legal  formalities  required a separate entities that they created contractual expectations of unitary liability among some or all creditors, such that substantive consolidation is a necessary and proper remedy. [Complaint ¶ 79].

7.  Debtor and Danny Kretchmar acted as sales representatives for Pioneer Hi-Bred International, Inc., and held themselves out to Pioneer and Pioneer's customers as being part of the same entity or entities in selling Pioneer's products.  [Complaint ¶ 80].

8.  The affairs of Kretchmar Partners, Kretchmar Farms and Debtor were so closely linked, intertwined and co-mingled that they are effectively one entity.  Debtor was merely the alter ego for the other Kretchmar Partners and Kretchmar Farms. [Complaint ¶ 82 & 83].

9.  The Parents have assets sufficient not only to satisfy all the creditors of the Debtor, but also their own creditors, if any, and still have remaining assets thereafter.  The Parents receive income from royalty payments from their mineral interests, farming operations and other sources such that "no creditor will be harmed by substantive consolidation, and most if not all creditors shall materially benefit."  [Complaint ¶ 148].

## IV.  Analysis

Normally, a motion to dismiss requires the court to analyze the complaint to determine whether the plaintiff has stated facts supporting all the required constituent elements for a particular claim for relief, here substantive consolidation.  In the present case, however, the Parents' primary argument is not that the Plaintiffs have alleged all the necessary indicia to support substantive consolidation, but that dismissal is appropriate because, as a matter of law, the only way to achieve the effect of substantive consolidation of a non-debtor is the filing of an involuntary bankruptcy against it.  That issue presents a purely legal question, and courts have the authority to "fully resolve any purely legal question" on a motion to dismiss at the Fed.R.Civ.P.12(b)(6) stage.  *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  Therefore, the Court must address two separate issues here.  The threshold issue is whether the Court has the authority to substantively consolidate a debtor with a non-debtor other than through the filing of an involuntary petition under § 303.  If the answer to this question is no, then the Court need not proceed any further in its analysis and the Complaint so far as it relates to Claim for Relief 9 for substantive consolidation must be dismissed.  On the other hand, if the Court does recognize substantive consolidation as an action separate and apart from an involuntary proceeding, then it must determine whether the Complaint pleads facts

6

which could plausibly sustain this claim for relief.

### 1. Must Substantive Consolidation Only be Achieved Through the Filing of an Involuntary Bankruptcy

There is little doubt in this Court's mind that the ultimate effect of substantive consolidation results in the same draconian outcome as would an involuntary proceeding without affording the non-debtor target the numerous procedural protections of § 303[5]. No doubt requiring compliance with § 303 would substantially limit, if not eliminate, the remedy of substantive consolidation. Accordingly, many courts that discuss § 303 in connection with non-debtor substantive consolidation have held against substantive consolidation. For example, a fellow court in the Tenth Circuit in *In re Circle Land & Cattle Corp*, 213 B.R. 870, 876 (Bankr. D. Kan. 1997) dismissed a creditor's adversary complaint seeking to substantively consolidate a non-debtor with a debtor. There, as here, the non-debtor target was a farmer under § 101(20). The court stated as follows:

> [S]ince Custom meets the definition of a farmer under § 101 (20) of the Code, § 303(a) excepts it from being placed in involuntary bankruptcy. If, through its complaint, Helena could consolidate Custom's assets with those of Circle, it would be obtaining relief not permitted to either it or Custom under the Code. Therefore, use of the court's equitable powers to force a non-debtor into bankruptcy without § 303 protection for involuntary petitions conflicts with express requirements of the code.[6]

_____

[5] The requirements and protections afforded the putative debtor in an involuntary proceeding include: (1) three petitioning creditors (in the case of the putative debtor having more than twelve creditors), (2) the creditors holding claims that are not contingent or subject to a bona fide dispute as to liability or amount, (3) a minimum aggregate amount of unsecured debt, (4) the petitioning creditors posting bond to protect the putative debtor against damages in the event the creditors are not successful, (5) the requirement that the proceeding is brought in good faith and not filed for an improper purpose, (6) the order for relief will only be entered upon a showing that the debtor is generally not paying its debts, and (7) the award of attorney's fees and costs in the event that the involuntary petition is dismissed.

[6] Interestingly, the court's decision in *Circle Land and Cattle Corp.* dismissing the Complaint was based not only upon the basis that substantive consolidation was contrary to § 303(a) but also

Similarly, in *In re Pearlman*, 462 B.R. 849, 855 (Bankr. M.D. Fla. 2012) the court explained that "[g]iven the significant protections § 303 provides to debtors facing involuntary bankruptcy, and the lack of commensurate protections for substantive consolidation, 'forcing a non-debtor into bankruptcy via substantive consolidation circumvents these strict requirements and is in contravention of [the Code]'."  See also, *In re Archdiocese of St. Paul and Minneapolis*, 553 B.R. 693, 700 (Bankr. D. Minn. 2016) ("[S]econd, substantively consolidating a debtor with non-debtors over their objections squarely implicates § 303(a). In addition to its other statutory standing, procedural and substantive requirements, §303(a) bars the involuntary bankruptcy of 'a corporation that is not a moneyed, business, or commercial corporation'."); *In re Cordia Communications Corp.*, 2012 WL 379776 (Bankr. M.D. Fla. 2012)("forcing a non-debtor into bankruptcy via substantive consolidation circumvents the strict requirements [of § 303] and is in contravention of [the Code]") (quoting *In re Ira S. Davis*, 1993 WL 384501 at *7 (Bankr. E.D. Pa. 1993)("[I]f the involuntary consolidation of the Debtor and Storage were permitted, we would be permitting the Trustee to circumvent all the requirements and strongly established policies of 11 U.S.C. § 303.  The facts in this case do not warrant such a result."); *In re Lease-A-Fleet*, *Inc.,* 141 B.R. 869, 873 (Bankr. E.D. Pa. 1992) ("An attempt to involuntarily consolidate a non-debtor with a debtor end runs all of the foregoing stringent requirements and rather harsh consequences for failure provided in § 303 in connection with the filing

---

on the grounds that the plaintiff had not stated the requisite equitable element required in most substantive consolidation cases that consolidation would result in a benefit to the creditors of both the debtor and the non-debtor target. The court then also stated as a third alternative basis for its ruling that § 105, upon which substantive consolidation is  based, was not a jurisdictional statute and did not permit the bankruptcy court to exercise jurisdiction over a non-debtor.  For purposes important to this Court, the case is also distinguishable from the present case in that there substantive consolidation was sought between a corporate debtor and the individual allegedly controlling it, not between an individual debtor and an individual non-debtor.

of an involuntary petition."). Clearly there is case authority for the Parents' position that substantive consolidation is a disguised involuntary bankruptcy which requires the application of § 303. That, however, is the minority view.

The majority view that substantive consolidation does not run afoul of the procedures for the filing of an involuntary bankruptcy was stated in In re *NM Holdings, LLC*, 407 B.R. 232, 280 (Bankr. E.D. Mich. 2009):

> Substantive consolidation does not eviscerate the protections of non–debtors contained in § 303 of the Bankruptcy Code, because by definition, those protections only apply when creditors use §303 to file and prosecute an involuntary bankruptcy petition. Substantive consolidation is a different remedy with a different purpose. The doctrine of substantive consolidation has its own protections for the non-debtor built into it.

Similarly, in *Munford Inc. v. TOC Retail Inc. (In re Munford Inc.)*, 115 B.R. 390 (Bankr. N.D. Ga. 1990) the defendants argued that § 105 of the Code was not so broad to include "such an extreme remedy" in part since § 303 provided a method to bring a non-debtor into bankruptcy. The court disagreed, stating that substantive consolidation of a non-debtor is "substantially different than the involuntary petition remedy of § 303". In seeking the substantive consolidation of non-debtor, the debtor was not trying to:

> create an independent bankruptcy estate for [the non-debtor] . . . [The nondebtor] is not an insolvent entity ... [T]he insolvency requirement of § 303 would subvert the entire purpose of substantive consolidation in this case, which is to recover assets from a financially sound entity. Substantive consolidation, therefore, must be considered a remedy which is entirely independent of, and indeed inconsistent with, the involuntary petition remedy. Accordingly, it is recognized as an alternative means to bring a non-debtors assets into a debtor's estate.

*Id*. at 397-98; *accord*, *In re Alico Mining Inc.*, 278 B.R. 586, 588 (Bankr. M.D. Fla. of 2002);

*Bracaglia v. Manzo (In re United Stairs Corp.)*, 176 B.R. 359 (Bankr. D. N.J. 1995)

(substantive consolidation of non-debtor appropriate independent of the right to petition for involuntary bankruptcy); *Kapila v. S & G Financial Services, LLC (In re S & G Fin. Servs. of South Florida Inc.*), 451 B.R. 573 (Bankr. S.D. Fla. 2011).

Additional authority for rejecting the view of an involuntary proceeding as a substitute for an action for substantive consolidation is the very fact that a large majority of courts, including those in the Tenth Circuit, permit the doctrine of substantive consolidation to be applied to a non-debtor without any discussion of § 303. Furthermore, because an involuntary bankruptcy and substantive consolidation are separate, independent remedies, the Court does not find they are in direct conflict so as to preclude substantive consolidation under *Law v. Siegel*,___U.S.___ , 134 S.Ct. 1188 (2014).

As discussed above, while the Parents argument that the Plaintiffs must proceed by an involuntary bankruptcy has some logic and case authority behind it, it is a minority position and not the law in the Tenth Circuit as this Court interprets it. The Court therefore finds that the Parents' Motion to Dismiss the substantive consolidation claim based on its § 303 argument is denied. That, however, does not end the discussion as to whether a claim for substantive consolidation has been stated under the criteria established by case authority as enunciated in this Court's recent decision in *SE Property Holdings, LLC v. Stewart,* 571 B.R. 460 (Bankr. W.D. Okla. 2017), so as to pass Rule12(b)(6) muster.[7]

### 2.    Substantive Consolidation In General

The ability of creditors in bankruptcy to seek the "substantive consolidation" of the assets and liabilities of affiliated but non–debtor entities has been recognized for more than

---

[7] The Parents in their Motion to Dismiss did not cite the presently applicable standard of the United States Supreme Court for review of complaints under Rule 12(b)(6). In fact, they never made reference to the Rule. Plaintiffs have cited in their pleadings the Rule 12(b)(6) standards.

sixty-five years.  *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904 (1941) (holding that the assets of an individual debtor could be "consolidated" with the assets of the corporation to which the individual had fraudulently transferred substantially all of his assets).  Essentially, for purposes of distribution in bankruptcy, substantive consolidation treats multiple entities as if they were one.  See *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 58 (2nd Cir. 1992); see also *2 Collier on Bankruptcy* ¶ 105.09 [3] (Allen N. Resnick & Henry J. Sommer [15th Ed. 2006](citing *FDIC v. Colonial Realty Co.*, 966 F2d. 57 (2nd Cir. 1992) ("In general, substantive consolidation results in the combination of the assets of both debtors into a single pool from which the claims of creditors of both debtors are satisfied ratably.").   As a consequence, creditors need not rely upon recovering on their claims from their original obligor; rather, creditors may recover their ratable share of a "common pot" consisting of the combined assets of the consolidated entities.

There are no provisions in the Bankruptcy Code that specifically authorize the bankruptcy court to approve substantive consolidation of separate entities into a single bankruptcy case, although such authority is usually derived from § 105(a) which provides that the court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."[8] Because the doctrine of substantive consolidation is based strictly on equity, there are no statutorily prescribed standards. Instead, judicially developed standards control whether substantive consolidation should be granted in any given case.  As a result of substantive consolidation being heavily dependent upon unique factual circumstances on a case-by-case basis a conflicting and

---

[8] The exception, not applicable here, is that in a joint case involving a debtor and the debtor's spouse, the Bankruptcy Code provides that "the court shall determine the extent, if any, to which the debtors estates shall be consolidated." 11 U.S.C. § 302(b).

murky body of law has developed indicating when the doctrine should be applied.

There is a split of authority as to whether a bankruptcy court has the authority to substantively consolidate *non-debtors* assets and liabilities into a bankruptcy debtor's estate. The majority of circuits, including the Tenth Circuit, recognize that bankruptcy courts have the authority to substantively consolidate bankruptcy cases pursuant to their general equitable powers. In the Tenth Circuit the law on substantive consolidation was laid down in *Fish v. East*, 114 F.2d 177 (10th Cir. 1940) and *FDIC v. Hogan (In the Matter of Gulfco Investment Corp.)*, 593 F.2d 921 (10th Cir. 1979). The holdings in *Fish* and *Gulfco* were summarized by a bankruptcy court in the Tenth Circuit in *Castle Arch Real Estate Investment Co., LLC,* 2013 WL 492369 at *16-17 (Bankr. D. Utah 2013), wherein the court stated as follows:

> "**The *Gulfco/Fish* criteria can be reduced into two general components: (1) the extent to which the entity to be substantively consolidated was managed or controlled by the debtor, and (2) whether the entity to be substantively consolidated had an economic existence independent from the Debtor. (citing In re *Horsley*, 2001 WL 1682013 *4 (Bankr. D. Utah 2001)).
>
> Finally, as recognized by numerous courts, the degree of difficulty and expense involved with segregating and ascertaining individual assets and liabilities of each of the entities is particularly relevant. (citing *Gulfco*). Thus, substantive consolidation is proper where the assets of the entities in question are "hopelessly co-mingled," (citing *Gulfco*) or where difficult accounting problems caused by inter-company debt are "so strong that the great expense (in order to bring about an unscrambling) threaten[s] recovery.

See also *In re Tureaud*, 45 B.R. 658 (Bankr. N.D. Okla. 1985).

The most commonly cited case on substantive consolidation in the Tenth Circuit, and elsewhere, is that of the Third Circuit in *In re Owens Corning*, 419 F.3d 195, 211-212 (3rd Cir. 2005). There, the Third Circuit stated its test as follows:

***In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

***A prima facie case for [substantive consolidation] typically exists when, based on the parties' prepetition dealings, a proponent proves corporate disregard creating contractual expectations of creditors that they were dealing with debtors as one indistinguishable entity . . .. Proponents who are creditors must also show that, in their prepetition course of dealing, they actually and reasonably relied on debtors' supposed unity. Creditor opponents of consolidation can nonetheless defeat a *prima facie* showing under the first rationale if they can prove they are adversely affected and actually relied on debtors' separate existence.

****

***[B]ecause substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this "rough justice" remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code).

The other landmark case relied upon by most courts is *In re Auto-Train Corp. Inc.,* 810 F.2d 270, 276 (D.C. Cir. 1987), which enunciated a three-part test requiring that (1) the proponent show a substantial identity between the entities, (2) consolidation is necessary to avoid some harm or to realize some benefit, and (3) that if a creditor objects on the grounds that it relied on the separate credit of one of the entities to its prejudice consolidation may be ordered only if the benefits "heavily" outweigh the harm.  See *In re Schupbach Investments, LLC*, 2012 WL 3564159 (Bankr. D. Kan. 2012) (relying, in part, on *In re Auto-Train Corp*.).  This Court has recently held with the majority of case law that under very limited circumstances it has the discretion, to be exercised sparingly, to

substantively consolidate a debtor's estate with non-debtors.  *SE Property Holdings, LLC v. Stewart (In re Stewart),* 571 B.R. 460 (Bankr. W.D. Okla. 2017).

It is imperative to remember, however, that substantive consolidation is not totally dependent upon an alter ego theory where the debtor has intermingled control and assets of non-debtors.   The overriding equitable consideration is that consolidation will *benefit all creditors*, both those of the current debtors and those to be forcibly made debtors.   As stated in *In re Circle Land & Cattle Corp*, 213 B.R. 870, 875-876 (Bankr. D. Kan. 1997):

> Under these equitable guidelines stressing the impact of consolidation on the creditors of both entities, the remedy of substantive consolidation is sparingly granted.  One commentator has said, in the context of two debtors in bankruptcy, "Better, we think, to ask are any creditors going to be hurt by this consolidation and, if the answer to that is yes (or more properly, if the one seeking consolidation cannot prove the opposite), consolidation should be denied in almost every case.  3 David G. Epstein et al., *Bankruptcy* § 11-41 at 190 (Ed. 1992).

Similarly, as summarized in *Collier on Bankruptcy* ¶105.09 [1][d]:

> In general, courts have adopted the view that "[t]he power to consolidate should be used sparingly" because of the potential harm to creditors of substantive consolidation.  (citing *In re Owens Corning*, 419 F.3d 195, 205-06 (3rd Cir. 2005); see *In re Augie/Restivo Baking Co. Ltd.*, 860 F.2d 515, 518 (2nd Cir. 1988) (other citations).  Because this area of the law is based strictly on equitable principles without a statutory basis, it will continue to evolve.  In this area, however, the potential harm to innocent creditors on which the prior court's admonition was based should continue to give the courts pause before expanding the doctrine, despite the "modern" trend in some jurisdictions.

### 3.    Substantive Consolidation of an Individual Debtor with Individual Non-Debtors

While Plaintiffs have alleged facts in their Complaint which support many of the criteria for substantive consolidation, there is, in this Court's opinion, a major difference

between this case and most, if not all, cases seeking substantive consolidation of non-debtors. This case presents the perhaps unprecedented situation where substantive consolidation is sought where *both* the debtor and the non-debtors are *individuals*. The Plaintiffs and the Parents have not cited any authority, and this Court has not been able to independently find any, directly addressing whether substantive consolidation is appropriate in such circumstances. The Court does not believe it is, and must therefore hold that as a matter of law the Complaint does not state a claim upon which relief can be granted for substantive consolidation.

As this Court noted in *Stewart,* substantive consolidation is considered a disfavored, last resort, extreme remedy because the process creates one common pool consisting of assets, liabilities and a single body of creditors, while extinguishing the liabilities of the consolidated entities. *Stewart*, 571 B.R. at 470 (quoting *In re Owens Corning*, 419 F.3d 195, 205-06 (3rd Cir. 2005)).[9] Because of its extreme nature, substantive consolidation is, "no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights." *In re Flora Mir Candy Corp*., 432 F.2d 1060, 1062 (2nd Cir. 1970). This requires the Court to critically examine the nature and purpose of the doctrine of substantive consolidation.

The trend toward greater court approval of substantive consolidation "has its genesis in the increased judicial recognition of the widespread use of inter-related corporate structures . . .." *In re Raymond*, 529 B.R. 455, 490 (Bankr. D. Mass. 2015) (quoting *Eastgroup Properties v. Southern Motel Association, Ltd.*, 935 F.2d 245, 248 (11th

---

[9] Unlike the present case, in *Stewart* the creditor sought substantive consolidation of individual debtors and non-debtor corporations, limited liability companies and a trust allegedly controlled by them.

Cir. 1991)).  "Without the check of substantive consolidation, debtors could insulate money through transfers among inter-company shell corporations with impunity." *Raymond*, 529 B.R. at 490 (quoting *In re Bonham*, 229 F.3d at 746).  While now seen as an independent remedy from such state court remedies, the concept of substantively consolidating a non-debtor arose from the non-bankruptcy remedy of "piercing the corporate veil," which makes the assets of one entity available to creditors of another entity if the former entity were an "alter ego" or "mere instrumentality" of the latter entity.  See *In re Standard Brands Paint Co.*, 154 B.R. 563, 567-68 (Bankr. C.D. Cal. 1993); *In re Crabtree*, 39 B.R. 718, 721 (Bankr. E.D. Tenn.1984) (substantive consolidation "reflects the reality that [the non-debtor corporation] is simply the [debtor's] *alter ego* and an instrumentality used by him to conduct his financial affairs").  For that reason, many of the factors considered for substantive consolidation make reference to corporate entities, inter-corporate guarantees, failure to observe corporate formalities, consolidated financial statements and ownership between various corporate entities.  Such remedies invariably involve business entities and/or an individual and business entities. To the Court's knowledge, every case considering the issue has involved a factual situation in which the debtor and the non-debtor are both business entities or an individual and an business entity owned or controlled by him, but not both individuals.

The Court has great difficulty conceptualizing the substantive consolidation of individual debtors and individual non-debtors.  Under the Tenth Circuit *Gulfco/Fish* criteria the court should not order substantive consolidation where the non-debtors are not managed or controlled by the debtor and where the non-debtors have an economic

16

existence independent from the debtor.  *In re Castle Arch Real Estate Investment Co., LLC* 2013 WL 492369 (Bankr. D. Utah 2013) (quoting *In re Horsley*, 2001 WL 1682013, at *4 (Bankr. D. Utah 2001)).  Undoubtedly, the Parents have debts (e.g. their home mortgage, personal living expenses) and assets totally unrelated to the economic endeavors of their son.  It is one thing, under rare circumstances, to regard a business entity and an individual conducting business through it as one and the same entity.  It is an entirely different matter to view two or more individuals exercising their own free will as constituting one legal economic entity having no economic existence independent  from the debtor.  The "three-in-one" Trinity of three separate personalities being aspects of the same being may exist in theology, but it should not exist in bankruptcy.  That is a leap that this Court is not willing to take.

There is also no allegation in the present case that Farm Credit, or any other creditor of the Debtor/son, was relying upon the Parents in extending credit.  It is difficult, in the absence of inter-personal guarantees which are not involved in the present case, for this Court to believe in the absence of extraordinary circumstances (i.e. the mental or physical disability of the child) that a creditor dealing with an adult child is relying upon the parents to not only pay the child's obligation to that creditor but the parents are to be regarded as the same economic entity as the child so as to be liable for all of the child's obligations.  If, as is the case here, a  creditor or trustee believes that an individual debtor and other non-debtor individuals have engaged in conduct prohibited by law the creditor has other, less draconian, remedies than substantive consolidation, such as avoidance of fraudulent transfers, fraud, turnover or accounting under either state or bankruptcy law.  Plaintiffs have also asserted those claims in their Complaint.

17

Lastly, as this Court pointed out in *Stewart,* "[t]he overriding equitable consideration is that consolidation will benefit all creditors, both those of the current debtors and those to be forcibly made debtors."  571 B.R. at 470.  Plaintiffs don't argue that all the creditors of the Parents will be "benefited" by substantive consolidation (presumably, the Parents' creditors would probably not prefer that they and the Parents be dragged into a bankruptcy proceeding); rather, they assert that the Parents creditors "will not be harmed" because they "have assets sufficient to not only satisfy all creditors of the Debtor, but also their own creditors, if any, and to still have remaining assets thereafter."  [Complaint, Doc.1 ¶ 148].  Plaintiffs thus infer that a factor for substantive consolidation is that the targeted non-debtors have sufficient assets to pay both their own obligations and also those of the Debtor.  The Court rejects that inference.  While our legal system often appears to be one aimed at the redistribution of wealth, Plaintiffs appear to be arguing a variation of the "Robin Hood" principle of justice--that one should take from the rich and give to the poor; however, "[i]t is not the law of Robin Hood that we are to administer."  *In re Delaware Valley Broadcasters Limited Partnership,* 166 B.R. 36, 39 (Bankr. D. Del. 1994).

This Court takes seriously the admonition that it exercise great caution in the expansion of the doctrine of substantive consolidation.  See e.g. *Collier on Bankruptcy* ¶105.09 [1][d].  Accordingly, it will not expand the doctrine to situations, at least under the facts alleged in this Complaint, attempting to consolidate individual debtors with individual non-debtors.  The Court therefore grants the Parents' Motion to Dismiss as to Claim for Relief 9.

## V. The Standard for a Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because

of plaintiff's "failure to state a claim upon which relief can be granted".  The Court must evaluate the motion to dismiss to determine whether the complaint alleges sufficient facts supporting all the elements necessary to establish an entitlement to relief under the claims raised.  *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010); *Barenburg v. Burton* (*In re Burton*), 463 B.R.142 (10th Cir. BAP 2010).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face".  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed. 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed. 929 (2007).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Bare legal conclusions and simple recitations of the elements of a cause of action do not satisfy this standard.  *Twombly*, 550 U.S. at 555.  As the Tenth Circuit has stated:

> "To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While factual assertions are taken as true, legal conclusions are not. A plaintiff is "not required to set forth a *prima facie* case for each element, [but] is required to set forth plausible claims." *Khalik*, 671 F.3d at 1193.  "A claim has facial plausibility when the [pleaded] factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)."

*Cook v. Baca*, 512 Fed.Appx. 810, 821 (10th Cir. 2013); See also, *Lamar v. Boyd,* 508 Fed. Appx. 711 (10th Cir. 2013).

The Tenth Circuit has interpreted the "plausibility" requirement to mean "that if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible". *Robbins v. State of Oklahoma, ex rel., Department of Human Services*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief". *Id*.  It is well recognized that "granting a motion to dismiss is a harsh remedy and must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice". *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  The courts have the authority to "fully resolve any purely legal question" on the motion to dismiss and consequently, there is no "inherent barrier to reach the merits [claim] at the Rule 12(b)(6) stage." *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

The Plaintiffs correctly point out that in their Motion to Dismiss that the Parents did not argue that the Complaint is implausible and fails to state a claim for relief under the standards for dismissal under Rule 12(b)(6).  That deficiency in the Parents' Motion, however, does not preclude this Court from judging whether the Complaint states a claim for relief, aside from the § 303 issue.  Under appropriate circumstances, the court can identify a Complaint's inadequacies and, on its own initiative, dismiss a complaint so long as the Court afforded Plaintiffs notice of such action and an opportunity to respond.  See e.g. *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994); *Oatess v. Sobolevitch*, 914 F.2d 428, 430 n. 5 (3d Cir. 1990).  The Court here is not *sua sponte* raising a motion to dismiss; rather, it is considering the merits of the pending Motion to Dismiss based on applicable

legal standards whether Plaintiffs, beyond the Parents' rejected § 303 defense, have stated a claim for substantive consolidation.

Despite the fact that the Parents have not argued the applicability of the standards for a Rule 12(b)(6) motion to dismiss, Plaintiffs are not prejudiced by the Court considering the same because Plaintiffs have themselves correctly recognized and argued the correct standards in their pleadings in response to the Motion to Dismiss. The Court is not unfairly helping the Parents by asserting grounds for dismissal which they have not asserted. To not consider the Motion to Dismiss on the grounds that the allegations as pled do not state a claim for relief would result in the parties expending needless time and expense by adjudicating a claim for relief which the Court knows at this early stage as a matter of law cannot either be sustained or over which it should not exercise jurisdiction. Based on the discussion above, the Court finds as a matter of law that Plaintiffs cannot state a claim for relief for substantive consolidation of an individual debtor with individual non-debtors.

## VI. Dismissal of Plaintiff's State Law Claims.

In addition to the claim for substantive consolidation, the Parents have also moved to dismiss the following Claims for Relief of Plaintiff PCA (as opposed to the Plaintiff Trustee): (1) Claim for Relief 10, Accounting; (2) Claim for Relief 12, Veil Piercing: Fraud and Injustice (3) Claim for Relief 13, Piercing the Veil: Alter Ego; (4) Claim for Relief 14, Civil Conspiracy; (5) and Claim for Relief 16, Partnership/Joint Venture. Farm Credit asserts these are simply state law claims by which it seeks to collect money from third parties (the Parents) who are not debtors over which the Bankruptcy Court does not have jurisdiction. In response, Plaintiffs urge these state law claims are "related to" the bankruptcy over which this Court has jurisdiction.

21

The federal courts' subject matter jurisdiction regarding bankruptcy matters is described in 28 U.S.C. § 1334(a), which provides that "the district courts shall have original and exclusive jurisdiction of all cases *under* Title 11", and 28 U.S.C. § 1334(b) which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* Title 11, or *arising in or related to* cases under Title 11." (Emphasis added.). The district courts may, in turn, refer "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a).  To summarize, § 1334 lists four types of matters over which the district court (and by reference the bankruptcy court) has jurisdiction:

> (1)  cases "under" Title 11 (which are the bankruptcy cases themselves, initiated by the filing of a Chapter 7, Chapter 11, Chapter 13, etc. petition);
>
> (2) proceedings "arising under" Title 11 are matters that concern the  administration of the bankruptcy case and have no existence outside of the  bankruptcy ("core" proceedings), including those listed under 28 U.S.C. § 157(b)(1) such as a preference recovery action, an objection to dischargeability or discharge, objections to claims against the estate;
>
> (3) proceedings "arising in" Title 11 (those that could not exist outside of the bankruptcy case, but are not causes of action created by the Bankruptcy Code such as plan confirmation); and
>
> (4)  proceedings "related to" a case under Title 11 (such as a collection action against a third party for a pre-petition debt)

See, *In re McCraney*, 439 B.R.188,190 (Bankr. D. N.M. 2010).  Farm Credit's assertion of state law claims against the Parents does not directly involve property of the bankruptcy estate, and the claims exist independently of this bankruptcy.  The parties appear to agree, as does this Court, that the claims do not "arise in" or "arise under" the bankruptcy case,

so the Court's subject matter jurisdiction to adjudicate them depends on whether the claims are "related to" the underlying bankruptcy case.

The Tenth Circuit (along with the First, Fourth, Fifth, Six, Eighth, and Ninth Circuits) in *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990), has adopted the definition of "related to" jurisdiction set by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), overruled on other grounds by *Things Remembered, Inc. v. Petrarca,* 516 U.S.124,116 S.Ct. 494 (1995):

> Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could be brought in a district court or state court. The test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could *alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate*. (Emphasis added).

> A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end. (Emphasis added).

Under this test, a bankruptcy court has jurisdiction to adjudicate claims between third parties where the outcome of the litigation could have a conceivable effect on the bankruptcy estate. *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) ("related proceedings 'include' . . . suits between third parties which have an effect on the bankruptcy estate.") (quoting *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n. 5, 115 S.Ct. 1493 (1995)); *In re Otero County Hospital Association, Inc.*, 527 B.R. 719

(Bankr. D. N.M. 2015). Based on this test, the inquiry becomes does Farm Credit's state law claims have an effect upon the bankruptcy estate?

The Parents argue that there is no effect on the bankruptcy estate because the property of the bankruptcy estate in which it held a security interest has been abandoned by order of the court. Thus, say the Parents, under the second paragraph of *Gardner* quoted above, once the property has left the bankruptcy estate the court has lost jurisdiction over the matter. In response, Plaintiffs argue that *Gardner's* discussion of the effect of property leaving the estate was mere *dicta*; that *Gardner* by its own language applied *Pacor* which did not narrow its holding by requiring that the dispute concerned property the estate; and that in any event only certain, but not all, property of the estate was abandoned. In this Court's view, both parties are partially right.

*Pacor,* although given great deference in almost all the Circuits, is not binding precedent in any but the Third Circuit. The Tenth Circuit is free to follow it or not, or make any modifications it deems appropriate. Most cases in the Tenth Circuit have recognized that *Gardner did* narrow *Pacor.* See e.g. *In re Eneco, Inc.*, 431 B.R. 308, 2010 WL 744351 (10th Cir. BAP 2010); *In re Mordini*, 491 B.R. 567, 571 (Bankr. D. Colo. 2013) (*Gardner* "*put a further limitation on the Pacor* test stating that 'the bankruptcy court lacks related jurisdiction to resolve controversies between third parties which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy'")*; In re Professional Health Care, Inc*., 2002 WL 1465914 (Bankr. D. Colo. 2002) (following *Gardner* in circumscribing the breadth of the "could conceivably have any effect" language of *Pacor*).

In the present case, Claim for Relief 1 (Money Judgment for Liquidated Farm Credit Claim), Claim for Relief 12 (Veil-Piercing: Fraud and Injustice to Farm Credit under Oklahoma Law), Claim for Relief 13 (Piercing the Veil: Alter Ego Under Oklahoma Law), Claim for Relief 14 (Civil Conspiracy Against All Kretchmar Partners Under Oklahoma Law) and Claim for Relief 16 (General Partnership and/or Joint Venture Liability Against Kretchmar Partners-Farm Credit Under Oklahoma Law) are claims by Farm Credit, not the Trustee.[10]  These claims are on behalf of a third party creditor against non-debtor third parties (the Parents and Kretchmar Partners).  These claims do not seek the recovery of money against the Debtor.  The maintenance of those state law claims are not necessary to the administration of the bankruptcy estate.  To the extent that Farm Credit could argue that property of the Debtor, property of the Parents and Kretchmar Properties are one and the same by virtue of substantive consolidation, such argument is rejected by virtue of this Court having already determined that substantive consolidation is not appropriate.  To the extent Farm Credit believes that the Parents or Kretchmar Properties are wrongfully in possession of property of the Debtor's Estate (as opposed to attempting to obtain a judgment against the Parents to be satisfied out of their separate assets), Farm Credit and the Trustee still have the bankruptcy remedies of fraudulent transfer (Claim 11) or turnover

---

[10] The Parents did not move for dismissal of Claim for Relief 1 in which only Farm Credit, not the Trustee, seeks a money judgment against them.  The Court regards that as clearly a state law claim that does not affect the bankruptcy estate.  The Parents did move for dismissal of Claim for Relief 10 which is an action for accounting apparently brought on behalf of both Farm Credit and the Trustee.  While the Plaintiffs appear to rely upon § 105(a) as authority for the accounting, the Court views the authority for such an accounting pursuant to § 542 which specifically authorizes the Court to order such relief in conjunction with a turnover action.  An action for turnover in this case is brought under Claim for Relief 8. See e.g., *In re Reuter*, 499 B.R. 655 (Bankr. W.D. Mo. 2013).

(Claim 8) which survive the Parents' Motion to Dismiss.

Thus, the Court believes here, and as stated in *Gardner*, "the bankruptcy court lacks related to jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy." *Gardner*, 913 F.2d at 1518. For this reason, this Court concludes that it does not have subject matter jurisdiction over the state law claims by Farm Credit against the Parents and Kretchmar Farms, and that they must be dismissed. Accordingly,

**IT IS ORDERED** that Claim for Relief 1 (Money Judgment for Liquidated Farm Credit Claim), Claim for Relief 12 (Veil-Piercing: Fraud and Injustice to Farm Credit under Oklahoma Law), Claim for Relief 13 (Piercing the Veil: Alter Ego Under Oklahoma Law), Claim for Relief 14 (Civil Conspiracy Against All Kretchmar Partners Under Oklahoma Law) and Claim for Relief 16 (General Partnership and/or Joint Venture Liability Against Kretchmar Partners-Farm Credit Under Oklahoma Law) are dismissed, without prejudice, and

**IT IS FURTHER ORDERED** that the Trustee's and Farm Credit's Claim for Relief 9 for substantive consolidation is **Dismissed** with prejudice.

**# # #**

26