**Dated: June 25, 2019**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 16-14337-JDL |
| Blake Lawrence Kretchmar, | ) | Ch. 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Susan Manchester, Trustee and | ) | |
| Farm Credit of Enid, PCA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 17-01026-JDL |
| | ) | |
| Blake Lawrence Kretchmar | ) | |
| Danny Kretchmar, | ) | |
| Debbie Kretchmar, | ) | |
| and Kretchmar Farms, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION TO DISQUALIFY COUNSEL**

**I. Introduction**

This adversary proceeding was originally brought by the Chapter 7 Trustee and the Debtor's largest creditor, Farm Credit of Enid, PCA ("Farm Credit"), asserting some thirteen

claims for relief against the Debtor and the Debtor's parents, Danny and Debbie Kretchmar (the "Parents"), including seeking substantive consolidation of the Parents and the Debtor. After the Court partially granted the Parents' Motion to Dismiss, including dismissal of the claims for substantive consolidation of them individually with the Debtor, there remain three claims for relief directly affecting the Parents: (1) Claim No. 9 filed by both Farm Credit and the Trustee seeking substantive consolidation of the alleged partnership of Kretchmar Farms and the Debtor; (2) Claim No. 11 against the Parents by the Trustee seeking to avoid fraudulent transfers from the Debtor to Kretchmar Farms; and (3) Claim No. 15 filed by the Trustee asserting that Kretchmar Farms is a general partnership of which the Debtor is a partner.

For the second time in this adversary,[1] claiming an impermissible conflict of interest exists with the law firm of Gable & Gotwals ("GableGotwals") acting as counsel for both the Trustee and Farm Credit, the Parents have moved to disqualify GableGotwals. Before the Court for consideration are the *Second Motion of Danny and Debbie Kretchmar to Disqualify Plaintiffs' Counsel* (the "Motion") [Doc. 76]; the *Trustee's Response to Kretchmar Parents' Second Motion to Disqualify Her Special Litigation Co-Counsel* (the "Response") [Doc.87]; *Farm Credit's Objection to Kretchmar Parents' Second Motion to Disqualify Plaintiffs' Counsel* [Doc. 88]; *Reply Brief in Support of Second Motion of Danny and Debbie Kretchmar to Disqualify Plaintiffs' Counsel* [Doc. 90] and *Plaintiffs' Sur-Reply in Opposition*

---

[1] See, *Manchester v. Kretchmar et al. (In re Kretchmar)*, 577 B.R. 397 (Bankr. W.D. Okla. 2017) (the Court denied the Parents' and Debtor's motion to disqualify the Trustee and Farm Credit's counsel, holding that no "actual conflict of interest" presently existed, such that present counsel could represent both the Trustee and Farm Credit as an undersecured creditor, provided that Farm Credit would not assert any claim as a secured creditor).

*to Kretchmar Parents' Second Motion to Disqualify* [Doc. 93]. Briefly stated, the Parents have moved to disqualify the GableGotwals' attorneys upon four grounds: (1) an actual conflict of interest exists between Trustee and Farm Credit; (2) GableGotwals is failing to provide a full, fair and impartial assessment of the issues in the case; (3) the Trustee has failed to properly supervise and control GableGotwals and (4) GableGotwals has failed to disclose the attorney fees which it has been paid by Farm Credit.[2] Pursuant to Fed.R.Bankr.P. 7052 and 9014[3] and *Fullmer v. Harper*, 517 F.2d 20, 22 (10th Cir. 1975), the Court makes the following Findings of Fact and Conclusions of Law underpinning its decision.

## II. General Standards for Disqualification of Counsel

The burden of proof is on the movants as the party seeking disqualification of a professional appointed under § 327. *In re Cleveland Trinidad Paving Co.*, 218 B.R. 385, 388 (Bankr. N.D. Ohio 1998). The moving party bears the initial burden of going forward with evidence sufficient to establish a prima facie case that disqualification is warranted. *Lowe v. Experian*, 328 F.Supp.2d 1122, 1125 (D. Kan. 2004); *World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.*, 866 F.Supp. 1297 (D. Colo. 1994). However, the burden is not a heightened one, rather, "that burden must be borne by a preponderance of the evidence to show that the standards of § 327(a) and Rule 2014 have been compromised." *Cleveland Trinidad Paving Co.*, 218 B.R. at 388. The ultimate burden

---

[2] This fourth, and last, issue was not raised in the Parents' Motion but was raised for the first time in their *Reply* [Doc. 90].

[3] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated. All future references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

3

of proof, however, lies with the attorney or firm whose disqualification is sought. *Lowe*, 328 F.Supp.2d at 1125; *In re Waldrop*, 2016 WL 6090849 (Bankr. W.D. Okla. 2016).

The Court has the inherent power to disqualify counsel "where necessary to preserve the integrity of the adversary process." *Lowe,* 328 F.Supp.2d at 1125. Motions to disqualify counsel are committed to the court's sound discretion. *Parkinson v. Phonex Corp.*, 857 F.Supp. 1474, 1476 (D. Utah 1994); *Beck v. Board of Regents of the State of Kansas*, 568 F.Supp. 1107, 1110 (D. Kan. 1983) (the court should not act unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation."); *Greenebaum–Mountain Mortgage Co. v. Pioneer National Title Insurance Co.*, 421 F.Supp. 1348, 1353 (D. Colo. 1976).

A motion to disqualify must be decided on the specific facts of each case, and the court must carefully balance the interest in protecting the integrity of the judicial process against the right of a party to have the counsel of its choice. *Lowe,* 328 F.Supp.2d at 1125. A functional analysis is required. *SLC Limited V v. Bradford Group West, Inc.*, 999 F.2d 464, 468 (10th Cir. 1993); *Polly Software International Inc. v. Su*, 880 F.Supp. 1487,1494 (D. Utah 1995).

An evidentiary hearing, is not required when the parties, as the Court finds here, have fully briefed the issue of disqualification, and there are no disputed issues of fact or there is otherwise no need for any additional evidence to be presented to the Court. *Weeks v. Independent School District No. I-89 of Oklahoma County*, 230 F.3d 1201, 1212 (10th Cir. 2000); *Manchester v. Kretchmar (In re Kretchmar)*, 577 B.R. 397, 402-03 (Bankr. W.D. Okla. 2017). However, the court must make specific findings and conclusions when

4

ruling on a motion for disqualification of counsel. *Fullmer v. Harper*, 517 F.2d at 22; *Kretchmar*, 577 B.R. at 403.

### III. Counsel's Required Disinterestedness and Absence of Conflict of Interest

The qualifications prerequisite to employment of professionals are set forth in 11 U.S.C. § 327. Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

This section creates a two-part requirement for retention of counsel: counsel must "not hold or represent an interest adverse to the estate" and must be a "disinterested person." *In re Cook*, 223 B.R. 782, 789 (10th Cir. BAP 1998); *In re 7677 East Berry Avenue Associates, L.P.*, 419 B.R. 833, 840 (Bankr. D. Colo. 2009). The term "disinterested person" is defined in the Bankruptcy Code as one that "does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason." § 101(14)(C). On the other hand, the term "adverse interest" is not defined in the Bankruptcy Code but instead, the term has been given meaning largely through a case-by-case evaluation of particular situations in the bankruptcy context. For example, in determining whether a professional has or represents an "adverse interest", Judge Rasure stated in *In re Git–N–Go, Inc.*, 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004):

> "[I]f it is plausible that the representation of another interest may cause the debtor's attorney to act any differently than they would without that other representation, then they have a

5

> conflict and an interest adverse to the estate." *In re The Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994). An actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served at the expense of the other.' *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D. N.J.1989), *aff'd* in pertinent part, 119 B.R. 35 (D. N.J. 1990). 'As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might, in the view of the trustee or the bankruptcy court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of the case.' *In re Amdura Corp.*, 121 B.R. 862, 865 (Bankr. D. Colo. 1990), (quoting *Collier on Bankruptcy* ¶ 327.03 (1985).

*See also, In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd* in part and *rev'd* in part on other grounds, 75 B. R. 402 (D. Utah 1987) (*en banc*), defining "adverse interest" as:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*7677 East Berry Avenue Associates,* 419 B.R. at 842; *In re Hutter,* 215 B.R. 308, 313 (Bankr. D. Conn. 1997).

The qualification of professional under § 327(a) is modified somewhat by § 327(c) which is applicable to a proposed attorney who also represents a creditor in the bankruptcy case. "Congress has explicitly stated that a professional's representation of a creditor does not *per se* disqualify it from being retained under § 327(c):

> [a] person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an

6

*actual conflict of interest*. (Emphasis added).

*Winship v. Cook (In re Cook),* 223 B.R. 782, 789 (10th Cir. BAP 1998) (While representation of a creditor is not a *per se* bar to employment by the trustee under § 327(c), an actual conflict of interest or the appearance of impropriety remain as independent grounds for disqualification."); *In re Champ Car World Series, LLC*, 411 B.R. 619, 624 (Bankr. S.D. Ind. 2008) ("Section 327(a), as well as the 'creditor exception' of § 327(c) provides for a *per se* disqualification of any attorney who has an actual conflict of interest with representing the trustee."); *In re Platinum Oil Properties, L.L.C.*, 2009 WL 5201851 *10 (Bankr. D. N.M. 2009) ("Section 327(a) of the Bankruptcy Code imposes a *per se* disqualification of counsel for the estate who has an actual conflict of interest").

Courts have said that "[a]n actual conflict of interest exists where there is 'active competition between two interests, in which one interest can only be served at the expense of the other.'" *In re Johnson*, 312 B.R. 810, 822 (D. E.D. Va. 2004) (quoting *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D. N.J.1989), *aff'd,* 949 F.2d 1300 (3rd Cir. 1991).  In summary, a creditor's attorney who seeks appointment as trustee special counsel need not show disinterestedness or the absence of an adverse interest but merely that he will have *no actual conflict of interest* in representing both the trustee and his creditor client.  There is no "actual conflict of interest" warranting disqualification unless (i) the interest of the trustee and the creditor are in fact directly conflicting or (ii) the creditor is actually afforded a preference that is denied to other creditors

### IV. Would Substantive Consolidation Create a Conflict of Interest Between the Trustee and Farm Credit?

Farm Credit seeks the Court to find that Kretchmar Farms was a general

partnership comprised of the Debtor and his Parents (or either of them) through which the Debtor did business so that "Kretchmar Farms and each individual participant therein and their respective assets are liable to, or subject to consolidation with, the chapter 7 estate of Debtor and payment of the claims of Debtor's creditors." [Doc. 1, ¶ 70]. At the time Farm Credit repossessed and sold all of its collateral by virtue of a security interest which had only been granted by, and perfected in the name of the Debtor and not with Kretchmar Farms, it was owed $583,881.96. Farm Credit disposed of the collateral which resulted in a deficiency of approximately $280,000. [Doc. 1, ¶ 16]. Parents argue that if Farm Credit is successful in its claim that the Debtor's assets and liabilities are also those of Kretchmar Farms, the Trustee would have a claim against Farm Credit for its conversion of Kretchmar Farms' interest, (as well as any non–partner Parent) in the repossessed collateral in which Farm Credit never held a valid security interest. Thus, claim the Parents, GableGotwals has an actual conflict of interest and cannot continue to represent both the Trustee and Farm Credit when the Trustee may have potential claims against its other client, Farm Credit.

The Court recognizes that the employment of professionals with even a potential conflict of interest is generally disfavored. As the court observed in *In re BH & P, Inc.*, "[t]he terms 'actual' and 'potential' conflict merely describe different stages in the same relationship." 103 B.R. 556, 563 (Bankr. D. N.J. 1989). A conflict which is presently dormant may become active if certain contingencies occur. *Id*. It is true that § 327(c) refers only to "actual conflicts", but the fact that disqualification is mandatory where there is an actual conflict does not mean that there is no discretion to also disqualify employment where the conflict is "potential". *Id*. Therefore, this Court is of the view that

8

in most instances where there is even a "potential" for a conflict of interest employment should be denied. Ultimately, the decision to disqualify counsel for a "potential" conflict is solely within the Court's discretion and on a case-by-case basis. In the present case, however, the Court doesn't even see that a potential conflict exists between concurrent representation of Farm Credit and the Trustee.

In the Court's view, the interests of the Trustee and Farm Credit do not conflict; they coincide; they both are interested in enlarging the estate by substantive consolidation and other avoidance actions. By undertaking such actions the Trustee and Farm Credit have the mutual goal of potentially "increasing the pot" of the now existing Debtor's estate which may potentially benefit all of the creditors of Debtor, including Farm Credit's presently outstanding unsecured, deficiency of approximately $280,000. If Farm Credit were to be successful on its substantive consolidation claim against Kretchmar Farms and then asserted a security interest in any property held in the name of Kretchmar Farms, the Court would find that an actual and potential conflict existed between it and the Trustee. The Court has made that position clear in its previous Order regarding disqualification. Farm Credit has, however, repeatedly represented to the Court that it does not, and will not, assert the position of a secured creditor in this case.

Nor does the Court find that a successful substantive consolidation claim against Kretchmar Farms would give rise to a claim by the Trustee against Farm Credit for conversion of property of Kretchmar Farms or individuals comprising that entity. On March 29, 2017, Farm Credit, the Debtor and the Trustee entered into an *Agreed Order Modifying Automatic Stay and for Abandonment* which ordered Debtor to surrender to Farm Credit its equipment collateral and authorized Farm Credit to sell the collateral at public auction,

with all net proceeds to be paid to Farm Credit and applied to reduce Farm Credit's claim. [Doc. 71]. While the issue is not yet before the Court, it would appear that the Trustee would be judicially estopped to claim that Farm Credit wrongfully converted property which the Court authorized and to which the Trustee agreed could be repossessed and sold. The Court does not find there is, or potentially could be, a disqualifying conflict of interest on account of potential claims by the Trustee against Farm Credit.

### V. Is GableGotwals Failing to Provide a Full, Fair and Impartial Assessment of the Issues in the Case?

The Parents seek disqualification of GableGotwals because it is not giving the Trustee "a full, fair and impartial opinion on the extent and validity of the issues in the case." [Doc. 76, pg. 10-11]. That is the Parents' subjective opinion. Such an opinion may be understandable given the aggressiveness with which Farm Credit and the Trustee have pursued them. It is not uncommon for defendants to believe that plaintiff's counsel is not making a "full, fair and impartial assessment of the issues in the case", that is inherent in the adversarial process. But there is no evidence before the Court that GableGotwals or the Trustee acted in a manner requiring disqualification of counsel. The Trustee has been a Chapter 7 Panel Trustee for more than 25 years, and she certainly knows that she is required to perform her fiduciary duties by exercising appropriate business judgment on all key decisions. In exercising that business judgment the Trustee is instructed to "determine whether the services are professional or needed, and whether the cost is warranted." *US Trustee Handbook*, p. 4-19. This is a complex case involving numerous issues, including the grant of a discharge, fraudulent transfers and the always difficult issue of substantive consolidation. The assistance of experienced outside counsel is of great

10

benefit to the Trustee. Moreover, the on-going cost of the litigation is being borne entirely by Farm Credit, with GableGotwals only having the right to make application for reimbursement of its fees and expenses in the event that the litigation is successful. At this juncture, the Court does not find that there has been a breach of the fiduciary duties of either Trustee or GableGotwals which would justify the draconian remedy of denying the Trustee the right to counsel of her choice.

### VI. Has the Trustee Failed to Properly Supervise and Control GableGotwals?

There is little doubt in the Court's mind that GableGotwals is "taking the lead" in the prosecution of this case. That is not surprising given the labor and financial resources which GableGotwals has at its disposal. Yet the Parents go so far as to assert that "Farm Credit has wrongly sought to usurp the office of the Trustee and control of this litigation", and that "by proposing to pay all fees of counsel, Farm Credit hopes to induce Trustee to fail to exercise her obligations for a full, fair and independent valuation of the litigation...." This is a not so-disguised allegation that GableGotwals has "bought off" the Trustee not to exercise her fiduciary duties. This is a weighty, if not scurrilous, allegation. If it were true the Parents, and this Court, should be seeking to remove the Trustee as well as disqualifying GableGotwals as her counsel. The Court finds, however, that there is not sufficient evidence before the Court which establishes the claim that the Trustee has in fact breached any fiduciary duty.

The primary basis alleged by the Parents that the Trustee's failed to "actively supervise" and to insure "compliance with required procedures" is that GableGotwals has failed to disclose the fees which it has received from Farm Credit since it was retained as

Special Counsel by the Trustee in June 2017. The Court does not find that GableGotwals, or the Trustee by complicity, has violated any such disclosure requirements. The *Trustee's Application to Appoint Special Counsel* specifically disclosed that:

> "Gable & Gotwals, Farm Credit of Enid, and the Trustee have agreed that Gable & Gotwals *may be paid its fees and expenses by Farm Credit of Enid in the ordinary course of business as they are incurred*. If bankruptcy estate recoveries are made as a result of the Avoidance Matters, then, *subject to court approval,* Farm Credit of Enid shall be granted an administrative expense claim in this case, under 11 U.S.C. § 503(b), to the extent of such fees and expenses, which claim shall be subordinate to other Chapter 7 administrative expense claims. (Emphasis added.).

[Bk 16-14337, Doc. 100, ¶ 8]. No party objected to the *Application*. On June 26, 2017, the Court entered its *Order Authorizing Trustee to Appoint Special Counsel* which granted the Trustee's Application and which provided that GableGotwals' "compensation to be paid in the amount which *may be allowed by the Court upon proper application or applications thereof...." (*Emphasis added*.) [Bk. 16-14337, Doc. 107].

The Parents correctly point out that any award of compensation to a professional person must be made in compliance with §§ 330 and 331. Section 330 provides that "the court may award to a ... professional person employed under section 327 or 1103" reasonable compensation and reimbursement for actual, necessary expenses "after notice to the parties in interest and the United States Trustee and a hearing ...." GableGotwals has yet to make application for any such fees from the Court. If and when it does, compliance with § 330 must be met. Similarly, § 331 regarding "interim compensation" provides that "after notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement." Again, GableGotwals has yet to make

12

application to the Court for payment of any fees and expenses from the bankruptcy estate.

The Parents point out that disclosure of fees must be made even though the source of those fees is from a third-party and not from the debtor. *See, e.g. In re Engel*, 124 F.3d 567, 571 (3rd Cir. 1997); *In re Stewart*, 583 B.R. 775 (Bankr. W.D. Okla 2018) (this Court finding that disgorgement of fees was appropriate where counsel for the *debtor* failed to disclose third-party payment of those fees). These cases involve the interplay between Bankruptcy Code §§ 329-330 and Rules 2016 and 2017. These statutes and rules work together to provide the framework for the systematic oversight of administrative costs, reasonableness of fees, and any questionable relationships of third-party payors to the debtor and the attorney in bankruptcy cases. Section 329(a) entitled "Debtor's transactions with attorneys" states:

> *Any attorney representing a debtor* in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and *the source of such compensation.* (Emphasis added.).

Rule 2016(b) provides the following procedure for implementing § 329:

> *Every attorney for a debtor*, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity .... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed. (Emphasis added.).

13

The language of § 329(a) makes it clear that it requires *a debtor's attorney* to disclose the source of such compensation. (Emphasis added.).  See *In re The Harris Agency, LLC*, 468 B.R. 702, 707 (Bankr. E.D. Pa. 2010) ("[I]t being settled that 'under Section 329 and Bankruptcy Rule 2016(b) [an attorney's disclosure statement] must disclose the source of ... compensation, even if the source is *not the debtor but a third-party entity'.*") (quoting 3 *Collier on Bankruptcy* ¶ 329.03 (15th ed. 2009)) (emphasis added); *In re Frye*, 570 B.R. 21, 31 (Bankr. D. Vt. 2017).

In the *Trustee's Application to Appoint Special Counsel* the Trustee and GableGotwals made full disclosure as to the source and manner of compensation to be paid GableGotwals as Special Counsel. The Court does not believe that Special Counsel for the Trustee was required to report all compensation received from Farm Credit until such time that it sought the Court's approval of fees from the bankruptcy estate.  Should such an application for reimbursement be made it will be incumbent upon GableGotwals to disclose all fees which it has received and for which it seeks reimbursement as it will be necessary to allocate that portion of GableGotwals' fees which benefitted the entire bankruptcy estate as distinguished from fees which only benefited Farm Credit.

For the reasons set forth above,

**IT IS ORDERED** that the *Second Motion of Danny and Debbie Kretchmar to Disqualify Plaintiffs' Counsel* [Doc. 76] is hereby **Denied.**

# # #